UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

KELLY FULBRIGHT, et al.,

Plaintiffs,

v.

DAYTON SCHOOL DISTRICT NO. 2, et al.,

Defendants.

CASE NO: 13-CV-0030-TOR

ORDER GRANTING SCHOOL DEFENDANTS' PARTIAL MOTION TO DISMISS

BEFORE THE COURT is a motion to dismiss filed by Defendants Dayton School District No. 2, Educational Service District No. 112, Douglas Johnson, and Larry Bush (collectively the "School Defendants") (ECF No. 5). This matter was heard without oral argument on April 5, 2013. The Court has reviewed the motion and the briefing and files herein, and is fully informed.

BACKGROUND

This lawsuit arises from a series of sexual assaults which were perpetrated against Plaintiff A.F. while she was being shuttled to and from a special education

placement in a bus operated by Defendant Columbia County Public Transport ("CCPT"). A.F. and her parents, Plaintiffs Kelly and Jeri Fulbright, have sued CCPT, as well as Defendants Dayton School District No. 2, Educational School District No. 112, Douglas Johnson and Larry Bush (collectively the "School District Defendants") for several causes of action under both state and federal law.

In the instant motion, the School Defendants seek dismissal of Plaintiffs' claims for (1) violation of A.F.'s right to be free from unreasonable seizure under the Fourth Amendment; (2) violations of A.F.'s right to substantive due process under the Fourteenth Amendment; (3) Title IX violations asserted by Mr. and Mrs. Fulbright; (4) Title IX violations asserted against Defendants Johnson and Bush in their individual capacities; (5) "reckless and wanton misconduct"; (6) respondeat superior; and (7) violations of the Washington Sexual Exploitation of Children Act. The School Defendants also raise alternative arguments concerning municipal liability, qualified immunity, supervisory liability and standing in opposition to the Plaintiffs' constitutional claims.

## FACTS

The following facts are drawn from Plaintiffs' Complaint and are accepted as true for purposes of this motion. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). A.F. is a developmentally delayed and cognitively impaired adult who resides with her parents, Plaintiffs Kelly and Jeri Fulbright, in Dayton,

Washington. A.F. has a Full Scale Intelligence Quotient ("IQ") of approximately 40 and functions at the level of a seven year-old child. As a result of her impairments, A.F. suffers from significantly reduced problem-solving abilities.

A.F. first enrolled in the Dayton School District No. 2 ("School District") in the fall of 1998. Shortly thereafter, A.F. was identified as a special needs student. With input from the Fulbrights, the School District created a special education program which focused on improving A.F.'s communication and academic skills. For the next several years, A.F. attended school without incident.

In November 2010, the School District and the Fulbrights agreed that A.F. would benefit from educational experiences geared toward developing work skills. To that end, the School District arranged for A.F. to participate in a "sheltered work experience" during school hours. This placement was located in Walla Walla, Washington, approximately 35 miles away from A.F.'s home in Dayton. Thus, the School District and its special education services provider, Educational Services District No. 112 ("ESD 112"),[1] arranged for A.F. to be transported to and from her placement on a bus operated by CCPT.

---

[1] The Complaint inaccurately refers to this entity as Educational School District No. 112, a fact that can be corrected by an amended complaint. *See* ECF No. 5 at 2.

For approximately two months, A.F. rode the transit bus to and from Walla Walla accompanied by a para-educator. In mid-September 2011, however, the School District determined that it could no longer afford the expense of having the para-educator travel with A.F. Over the Fulbrights' objection, the School District reassigned the para-educator, and A.F. began riding the bus alone.

On or about December 11, 2011, a CCPT official discovered from watching security videos that A.F. had been bothered by a male passenger while riding the bus. The official notified Mr. Fulbright of the incident via telephone and indicated that the passenger's behavior was inappropriate. The official also assured Mr. Fulbright that CCPT would take immediate action to keep his daughter safe. CCPT subsequently issued a memorandum to its drivers indicating that the drivers were responsible for ensuring that the male passenger did not sit next to, in front of, behind, or adjacent to A.F. The memorandum further advised drivers to ensure that A.F. was not bothered while riding the bus.

After being informed of the December 11 incident, Mr. Fulbright complained to the School District's Director of Special Education, Defendant Larry Bush ("Bush"), that A.F. had been "sexually harassed" while riding the bus. ECF No. 1 at ¶ 5.18. He further demanded that Bush and the School District "ensure that A.F. was never again left to defend herself from sexually inappropriate behavior" while traveling on the bus. ECF No. 1 at ¶ 5.18. Bush

assured Mr. Fulbright that CCPT had resolved the "issue" and advised him that no further corrective or preventative action was necessary. ECF No. 1 at ¶ 5.18.

In mid-January 2012, A.F. was subjected to a series of sexual assaults at the hands of a male passenger named Colton Langworthy.[2] The assaults continued until a female passenger informed the CCPT bus driver, Defendant Karen Zink ("Zink"), that she was concerned about Langworthy's conduct. After receiving this report, Zink advised A.F. to tell her parents if something was bothering her. Later that same day, A.F. informed her mother that she had been sexually assaulted. The Fulbrights immediately notified law enforcement, which in turn notified the School District's Superintendent, Defendant Douglas Johnson ("Johnson"). A subsequent review of security videos revealed that A.F. was forcibly molested on at least six separate occasions, including one incident in which Langworthy unzipped A.F.'s pants and touched her between her legs.

After experiencing the assaults, A.F. began to exhibit signs of "regression," including persistent crying, excessive scratching, obsessive worrying, frequent nightmares, and an aversion to being alone. A mental health counselor subsequently diagnosed A.F. with acute stress disorder and prescribed medication

[2] The Complaint does not specify whether Mr. Langworthy is the same male passenger who CCPT had previously identified from the bus surveillance video.

to treat her symptoms of anxiety and depression. According to the Complaint, "[A.F.'s] psychological profile remains guarded." ECF No. 1 at ¶ 5.25.

DISCUSSION

A motion to dismiss "tests the legal sufficiency of a [plaintiff's] claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive such a motion, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Naked assertion[s]," "labels and conclusions," or "formulaic recitation[s] of the elements of a cause of action will not do." *Id.* at 555, 557. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the plausibility standard is not akin to a probability requirement, "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In addition, Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In assessing whether Rule 8(a)(2) has been satisfied, a

court must first identify the elements of the plaintiff's claim(s) and then determine whether those elements could be proven on the facts pled. Although the court should generally draw reasonable inferences in the plaintiff's favor, *see Sheppard v. David Evans and Assocs.*, 694 F.3d 1045, 1051 (9th Cir. 2012), it need not accept "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted).

In ruling upon a motion to dismiss, the court must accept the factual allegations in the complaint as true and construe the pleadings in the light most favorable to the party opposing the motion. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). The court may disregard allegations that are contradicted by matters properly subject to judicial notice or by exhibit. *Id.* The court may also disregard allegations that are "conclusory" or are the product of unreasonable deductions and inferences. *Id.*

The Ninth Circuit has repeatedly instructed district courts to "grant leave to amend even if no request to amend the pleading was made, unless . . . the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). The standard for granting leave to amend is generous—the court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). In determining whether leave to amend is appropriate, a court must consider the following five factors: bad faith, undue delay, prejudice to the

opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

**A. Fourth Amendment Claim**

Plaintiffs allege that Defendants Johnson and Bush violated A.F.'s Fourth Amendment right to be free from unreasonable seizure by requiring her to ride the CCPT bus unaccompanied. According to Plaintiffs, requiring A.F. to make the 70-mile roundtrip commute from Dayton to Walla Walla without a chaperone was manifestly "unreasonable under the circumstances." ECF No. 6 at 6.

This claim fails because A.F. was not "seized" while she rode the bus. A Fourth Amendment seizure entails "a restraint on liberty to the degree that a reasonable person would not feel free to leave." *Doe ex rel. Doe v. Hawaii Dep't of Educ.*, 334 F.3d 906, 909 (9th Cir. 2003). Plaintiffs have not alleged that A.F.'s liberty was restrained at all, let alone restrained to the degree that a reasonable person in her position would not have felt free to leave. Because there do not appear to be any facts from which Plaintiffs could establish a Fourth Amendment seizure, this claim is dismissed with prejudice.

**B. Substantive Due Process Claims (Deliberate Indifference)**

As a general rule, the Fourteenth Amendment "typically does not impose a duty on the state to protect individuals from third parties." *Patel v. Kent Sch. Dist.*,

648 F.3d 965, 971 (9th Cir. 2011) (internal quotation and citation omitted). One exception to this rule is the so-called "state-created danger" exception, which applies to situations in which a state actor "affirmatively places the plaintiff in danger by acting with deliberate indifference to a known and obvious danger." *Id.* at 971-72 (internal quotations and citation omitted). To state a claim under this theory, a plaintiff must allege (1) an affirmative act which placed the plaintiff in danger; and (2) deliberate indifference to a known and obvious danger. *Id.* at 974. Only the second element is at issue in the instant motion.

As the Ninth Circuit explained in *Patel*, "deliberate indifference" is a very high standard of fault. Unlike gross negligence, deliberate indifference "requires a culpable mental state." 648 F.3d at 974. "The state actor must recognize an unreasonable risk and *actually intend* to expose the plaintiff to such risks without regard to the consequences." *Id.* (emphasis added) (quotation omitted). In other words, the defendant must "know[] that something ***is*** going to happen" and affirmatively expose the plaintiff to the risk. *Id.* (bold emphasis added).

The School Defendants argue that *Patel* mandates dismissal of A.F.'s deliberate indifference claims because the facts of that case are "more egregious" than those alleged in the Complaint. ECF No. 5 at 8. While *Patel* is clearly analogous, a qualitative comparison of its facts is not particularly helpful at this juncture. On a motion to dismiss, a court must decide whether the facts pled in a

complaint state a *plausible* claim for relief. *Iqbal*, 556 U.S. at 678. Whether the conduct alleged is "egregious enough" to violate the law is generally a question to be decided on summary judgment or by the finder of fact at trial. At this early stage of the proceedings, the Court must merely decide whether the claim has facial plausibility, that is, whether plaintiffs have pleaded sufficient factual content that allows the court to draw the reasonable inference that the defendants are liable for their deliberate indifference to a recognized risk.

The Court finds that Plaintiffs have failed to state a claim on the facts pled in the Complaint. Plaintiffs have not alleged that the Defendants recognized an unreasonable risk that A.F. would be *sexually assaulted* and that they *actually intended* to expose her to that risk. *See Patel*, 648 F.3d at 974. The facts alleged, when viewed in the light most favorable to the Plaintiffs, merely establish (1) that CCPT informed Mr. Fulbright that a male passenger had bothered A.F. on one prior occasion; (2) that CCPT drivers were notified to prevent the male passenger from bothering A.F.; (3) that Mr. Fulbright informed Defendant Bush that A.F. had been sexually harassed; (4) that Mr. Fulbright demanded that Defendant Bush ensure that A.F. was never again left to defend herself from sexually inappropriate behavior; and (5) Defendants failed to prevent a sexual assault from occurring. While these allegations may constitute gross negligence, they do not rise to the "markedly higher" standard of deliberate indifference. *See id.* at 976. At bottom,

the facts pled in the Complaint do not give rise to a plausible inference that Defendants recognized the magnitude of the risk (*i.e.*, that A.F. might be sexually assaulted as opposed to bothered), or that Defendants actually intended to expose A.F. to such a risk without regard to the consequences. *See id.* at 974. Accordingly, Plaintiffs' deliberate indifference claims are dismissed with leave to amend within fourteen (14) days of the date of this Order.

**C. Claims for Deprivation of Parental Relationship**

The School Defendants have moved to dismiss all § 1983 claims asserted by Mr. and Mrs. Fulbright on the ground that the constitutional rights at issue are personal to A.F. The Fulbrights acknowledge that they cannot recover for violations of A.F.'s constitutional rights, but indicate that they wish to assert separate claims for violations of their constitutional right to a parental relationship with their daughter. ECF No. 6 at 15-17. Although the Complaint does not list a violation of the Fulbrights' parental rights as a distinct claim, it does allege facts which, if proven, could constitute a violation of those rights. Accordingly, the Court will grant Plaintiffs leave to amend the Complaint to reference a distinct § 1983 claim for violation of the Fulbrights' parental rights. To the extent that the Fulbrights have asserted claims which are derivative of A.F.'s constitutional rights, those claims are dismissed with prejudice.

//

**D. Title IX Claims**

Title IX of the Education Amendments of 1972 provides that, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . ." 20 U.S.C. § 1681(a). Title IX's right to be free of discrimination on the basis of sex is enforceable through an implied private right of action, and damages are available as a remedy. *See Franklin v. Gwinnett Cnty. Pub. Sch.*, 503 U.S. 60, 65 (1992). The Supreme Court has held that, under certain circumstances, recipients of federal funds may be held liable under Title IX for student-on-student sexual harassment. *See Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 633 (1999).

1. The Fulbrights' Title IX Claims

A parent of a student subjected to sexual misconduct does not have standing to assert a *personal* claim under Title IX. *See Rowinsky v. Bryan Ind. Sch. Dist.*, 80 F.3d 1006, 1010 (5th Cir. 1996) (concluding parent did not have standing to assert a personal claim under Title IX), *disapproved on other grounds* by *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 637-38 (1999); *Seiwert v. Spencer-Owen Cnty. Sch. Corp.*, 497 F. Supp. 2d 942, 954 (S.D. Ind. 2007) ("[I]t is apparent from the language of Title IX that a parent lacks standing to bring a cause of action in their individual capacity based on Title IX."); *Doe v. Oyster River Co-Op. Sch.*

*Dist.*, 992 F. Supp. 467, 481 (D. N.H. 1997) (dismissing mother's Title IX claim under 12(b)(6) on grounds that "only participants of federally funded programs—and not the participants' parents—have standing to bring claims under Title IX."). Because the Fulbrights' Title IX claims lack a cognizable legal theory, they are dismissed with prejudice.

2. Title IX Claims Against Bush and Johnson

Plaintiffs allege Title IX claims against individual Defendants Bush and Johnson. Title IX's implied right of action reaches only the institution that receives federal funding. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 257 (2009). The statute "has consistently been interpreted as not authorizing suit against school officials, teachers and other individuals." *Id.* (citation omitted); *see also Doe v. Petaluma City Sch. Dist.*, 830 F. Supp. 1560, 1576 (N.D. Cal. 1993) ("[I]ndividuals may not be held personally liable under Title IX."); *Roe ex rel. Callahan v. Gustine Unified Sch. Dist.*, 678 F. Supp. 2d 1008, 1024 (C.D. Cal. 2009) (granting summary judgment in favor of defendants sued in their individual capacities under Title IX). Accordingly, the Title IX claims against Defendants Bush and Johnson in their individual capacities are dismissed with prejudice.

**E. Reckless and Wanton Misconduct**

Plaintiffs appear to have alleged "reckless and wanton misconduct" as a separate cause of action. *See* ECF No. 1 at ¶¶ 6.26-6.28. Reckless and wanton

misconduct, however, is not a separate cause of action under Washington common law. *Rodriguez v. City of Moses Lake*, 158 Wash.App. 724, 730-31 (2010). To the extent that Plaintiffs allege reckless and wanton misconduct as a separate cause of action, the claim is dismissed.

**F. Respondeat Superior**

Plaintiffs appear to have alleged respondeat superior as a separate cause of action. *See* ECF No. 1 at ¶ 6.37. Respondeat superior, however, is a theory of liability rather than a separate cause of action. *See Hollinger v. Titan Capital Corp*, 914 F.2d 1564, 1576-77 n. 28 (9th Cir. 1990). Again, to the extent that Plaintiffs allege respondeat superior as a separate cause of action, the claim is dismissed. Plaintiffs may, of course, rely upon this theory to establish vicarious liability.

**G. Sexual Exploitation of Children Act Claim**

Plaintiffs allege that Colton Langworthy's actions violated the Sexual Exploitation of Children Act ("SECA"), and that his actions arose from Defendants' misconduct. ECF No. 1 at ¶¶ 6.37-6.41. Under SECA, sexual exploitation of a minor occurs when a person compels, aids, or permits a minor to engage in "sexually explicit conduct." *See* RCW 9.68A.011(4), 040. A minor is defined as any person under the age of eighteen. RCW 9.68A.011(5).

A.F. turned eighteen on December 15, 2011. ECF No. 6 at 20. Thus, any incidents which occurred after this date, including the sexual assaults by Colton Langworthy which began on January 12, 2012, cannot form the basis of a valid SECA claim. Any SECA claim stemming from post-December 15, 2011 conduct is dismissed with prejudice.

The only incident which is alleged to have occurred prior to A.F's eighteenth birthday is the purported "sexual harassment" or "bothering" of A.F. discovered on December 11, 2011. ECF No. 1 at ¶ 5.16. However, "sexual harassment" does not qualify as "sexually explicit conduct" within the meaning of RCW 9.68A.011(4). In an abundance of caution, the Court will dismiss any claim stemming from this incident with leave to amend within fourteen (14) days of the date of this Order.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

The School Defendants' Partial Motion to Dismiss (ECF No. 5) is **GRANTED**. The following causes of action are dismissed with prejudice:

(1) Fourth Amendment unreasonable seizure claim;

(2) Title IX claims asserted by Plaintiffs Kelly and Jeri Fulbright;

(3) Title IX claims asserted against Defendants Douglas Johnson and Larry Bush in their individual capacities;

(4) claim for reckless and wanton misconduct;

(5) claim for respondeat superior; and

(6) SECA claims stemming from post-December 15, 2011 conduct.

The following claims are dismissed with leave to amend within fourteen (14) days of the date of this Order:

(1) substantive due process (deliberate indifference) claims; and

(2) SECA claim stemming from pre-December 15, 2011 conduct.

The District Court Executive is hereby directed to enter this Order and provide copies to counsel.

**DATED** April 10, 2013.




THOMAS O. RICE
United States District Judge